**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION**

| | |
|---|---|
| FCC HOTEL TOWER, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS A. DRUMMOND,<br>MBOR INVESTMENTS, LLC,<br>MBOR AMENITIES, LLC,<br>and MBOR RENTALS, LLC,<br><br>    Defendants. | Case No. 2:23-cv-00702-SPC-KCD |

**PLAINTIFF FCC HOTEL TOWER, LLC'S MOTION TO EXCLUDE
CERTAIN TESTIMONY OF PROFFERED EXPERT JOHN G. PLUMPE**

**TABLE OF CONTENTS**

**I. THE COURT MUST FUNCTION AS THE GATEKEEPER TO KEEP UNQUALIFIED AND UNRELIABLE EXPERT TESTIMONY FROM BEING CONSIDERED BY THE JURY** ... 1

**II. THE OPINIONS OF MARC REID** ................................................... 4

**III. THE OPINIONS OF PLUMPE** ......................................................... 5

    **a.   Summary of Plumpe's Opinions** ......................................... 5

    **b.   Plumpe's Franchise Fee Opinions are Irrelevant to Disgorgement** ................................................................. 6

    **c.   Plumpe's "Factors" and "Expertise" Opinions Should be Excluded** ......................................................................... 10

**IV. CONCLUSION** ................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Unlimited Bevs., Inc.*,
   218 F.3d 1238 (11th Cir. 2000)......................................................................6

*Burger King Corp. v. Pilgrim's Pride Corp.*,
   934 F. Supp. 425 (S.D. Fla. 1996) ................................................................6

*City of Tuscaloosa v. Harcros Chems.*,
   158 F.3d 548 (11th Cir. 1998)......................................................................2

*Cook v. Sheriff of Monroe County*,
   402 F.3d 1092 (11th Cir. 2005) ...................................................................3

*D'Andrea Bros. LLC v. United States*,
   No. 08-286C, 2012 U.S. Claims LEXIS 78,
   2012 WL 644010 (Fed. Cl. Feb. 10, 2012) ...................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* (on remand),
   43 F.3d 1311 (9th Cir. 1995) .......................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)................................................................................1, 3

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985).......................................................................8

*GE v. Joiner*,
   522 U.S. 136 (1997) ....................................................................................4

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998) .........................................................................8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ....................................................................................3

*Lebron v. Royal Caribbean Cruises, Ltd.*,
   No. 16-24687-CIV-WILLIAMS/SIMONTON,
   2018 U.S. Dist. LEXIS 124820 (S.D. Fla. July 26, 2018) ............................7

*Maltina Corp. v. Cawy Bottling Co., Inc.*,
   613 F.2d 582 (5th Cir. 1980).......................................................................6

*McCorvey v. Baxter Healthcare Corp.*,
   298 F.3d 1253 (11th Cir. 2002)..................................................................................4

*McDowell v. Brown*,
   392 F.3d 1283 (11th Cir. 2004)..................................................................................4

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
   316 U.S. 203 (1942)....................................................................................................8

*Orange Lake Country Club v. Reed Hein & Assocs.*,
   No. 6:17-cv-1542-Orl-78DCI, 2019 U.S. Dist. LEXIS 239117
   (M.D. Fla. Oct. 2, 2019) .............................................................................................7

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) .................................................................................3

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004)........................................................................ 2, 3, 8

**Statutes**

15 U.S.C. §1117...................................................................................................................4

**Other Authorities**

11th Cir. Pattern Civil Jury Instruction 5.13 ...................................................................8, 9

**Rules**

Fed. R. Civ. P. Rule 26 ......................................................................................................7

Fed. R. Evi. Rule 702 .............................................................................................. 1, 2, 3

Defendants have submitted and intend to rely on the opinion testimony of Mr. John G. Plumpe, an individual who holds himself out as an expert on damages in litigation. (Plumpe Report, Ex. 1.) Although characterized as "rebuttal" opinions, Plumpe goes far beyond rebuttal of FCC's damages expert, Marc Reid, by offering affirmative opinions on alternative theories to calculate damages untethered to the opinions presented by Reid. In particular, while FCC's expert offered opinions on damages theories of disgorgement and corrective advertising, Defendants' expert offered opinions based on a wholly different "apportionment" theory, pointing primarily to an article on large chain hotel franchise fees, which has nothing to do with the opinions supposedly being rebutted. Ultimately, Plumpe's opinions at Paragraphs 44-57 of his report fail to address the costs and expenses he contends should be excluded in the calculation of profits for purposes of the disgorgement analysis, and therefore are irrelevant to FCC's damages theories and Reid's opinions.

## I. THE COURT MUST FUNCTION AS THE GATEKEEPER TO KEEP UNQUALIFIED AND UNRELIABLE EXPERT TESTIMONY FROM BEING CONSIDERED BY THE JURY

District courts must act as "gatekeep[ers]" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) at 589 & n.7. Rule 702, *Fed. R. Evid.* governs the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Fed. R. Evid.* 702.

A district court considering the admissibility of expert testimony applies three principles:

> (1)   the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems.,* 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted).

Qualification. An expert's scientific training, education, or field experience may qualify him to testify on certain matters. *See, United States v. Frazier,* 387 F.3d 1244, 1260–61 (11th Cir. 2004). "Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Id*. at 1261.

Reliability. The methodology used by an expert witness requires a thorough inquiry into: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4)

2

whether the technique is generally accepted in the scientific community." *Id.* at 1262 (quotation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (explaining that reliability requires a case specific inquiry). The trial court's gatekeeping function requires more than simply taking the expert's word for it. *Fed.R.Evid.* 702 advisory committee's notes (2000 amends.) The gatekeeping role requires a district court to make a reliability inquiry, and that "the expert's bald assurance of validity is not enough" *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (on remand), 43 F.3d 1311, 1316 (9th Cir. 1995). A fundamental element for admissibility is that "[p]roposed [expert's] testimony must be supported by appropriate validation — i.e., 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 590. Among such factors, "[i]n evaluating the reliability of an expert's method ... a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293, n. 7 (11th Cir. 2005). Similarly, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1111 (11th Cir. 2005) (internal quotes omitted).

    <u>Assist the Trier of Fact.</u> The third factor, helpfulness, examines whether the expert testimony helps the trier of fact when the testimony "concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. "But nothing in either *Daubert* or the Federal Rules of Evidence requires a district

3

court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146 (1997). Rather, a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*: *see also McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) ("Under Daubert, scientific testimony does not assist the trier of fact unless the testimony has a justified scientific relationship to the pertinent facts.").

Burden. The proponent of expert testimony always bears the burden to show the proffered expert's testimony meets all three requirements: he is qualified to testify competently regarding the matters he intends to offer opinions on; the methodology used to reach his conclusions is sufficiently reliable; and the testimony assists the trier of fact. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

## II.   THE OPINIONS OF MARC REID

On November 1, 2024, Marc Reid, a Certified Public Accountant, tendered his opening expert report on damages on behalf of FCC. (November Reid Report, Ex. 2.) Reid's opening report concluded by finding that, based on the incomplete information received from Defendants as to their gross revenue (and no data at the time on Defendants' claimed costs or expenses), it was his opinion that $2,882,087 of Defendants' profits should be disgorged, as well as an additional $1,300,000 to $2,000,000 for corrective advertising. (Ex. 2, p. 18.) Specific to disgorgement, Reid noted that pursuant to the express language in 15 U.S.C. §1117, a plaintiff need only "prove defendant's sales," while a defendant has the burden of proving "all

4

elements of cost or deduction…" (Ex. 2, p. 9.) At the time of Reid's initial report, Defendants had yet to disclose the entirety of their revenue (and to date have not disclosed revenue for 2024) or to identify any items they contended were allowable costs or deductions. Because this case involves FCC's trademarks tied to renting rooms at its hotel/resort, Reid's opinions were that the total revenue derived from Defendants' services associated with renting rooms, with no evidence of costs or deductions, was the proper measure of disgorgement damages. Notably, Reid's report contains no discussion of royalties or franchise fees because FCC is not pursuing damages under either of those theories.

### III.   THE OPINIONS OF PLUMPE

#### a. Summary of Plumpe's Opinions

In his rebuttal report, Plumpe broke down his opinions on "Defendants' Profits" into three sections: "Defendants' financial data," "Defendants' profit analysis," "Apportionment of Defendants' profits." (Ex.___, p. 11.) Plumpe also included a separate section he titled "Mr. Reid's Opinions." (*Id.*, p. 24.) Plumpe first offered opinions on Defendants' gross revenue as well as specific costs and expenses from their financial statements that, according to Plumpe, are properly deducted from the gross revenue. (*Id.*, pp. 13-16.)

Plumpe captioned his next section "Apportionment of Defendants' Profits," which parrots a discussion of hotel franchise fees from a hospitality consulting group. Plumpe's discussion includes differing breakdowns of franchise fees into subcategories and a comparison of franchise fees collected by different hotel chains

5

from franchisees. (*Id*., p. 19-22.) According to Plump, franchisees are charged by hotel chains (on average) approximately 5% as a royalty fee, which can include fees for the brands' trademarks. (*Id*. pp. 19, 22.) Separately, Plumpe identifies "factors" he contends have an unquantified impact on the profitability of condo rentals (*id*., p. 22), then concludes with a statement that he believes Defendants have expertise in providing condo rentals. None of these so-called "apportionment" opinions have any relevance or connection to the disgorgement opinion set forth in Reid's report, nor are they linked to specific costs and deductions incurred by Defendants.

### b. Plumpe's Franchise Fee Opinions are Irrelevant to Disgorgement

In this case, Defendants' business is the rental of condo units, and all such units have been advertised and sold under trademarks that infringed marks owned by FCC. As such, the parties have properly recognized that the entirety of Defendants' revenue is the starting point for disgorgement. "To allow a deduction from gross profits, Defendant must establish that the claimed expenses actually relate to the sale and production of the infringing product." *Burger King Corp. v. Pilgrim's Pride Corp*., 934 F. Supp. 425, 426 (S.D. Fla. 1996) (citing *Maltina Corp. v. Cawy Bottling Co., Inc*., 613 F.2d 582, 586 (5th Cir. 1980)); *see also Abbott Labs. v. Unlimited Bevs., Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000) (affirming the district court's refusal to deduct costs because "they would have been incurred even without the sale of the prohibited product").

Plumpe's opinion on franchise fees and royalties does not address any revenue or expense of Defendants that relates to the provision of Defendants' services. There is no evidence in this case that Defendants pay franchise fees, nor that FCC is a franchisor that charges such fees. The article relied on by Plumpe for his discussion of franchise fees focuses on large hotel chains—which have nothing to do with FCC's trademark rights associated with its single property in Marco Island. There is no franchise relationship between the parties in this case. At best, Plumpe is offering an alternative theory that could be used to quantify trademark damages based on a reasonable royalty analysis, but it is an alternative theory he raises for the first time in his report, not a "rebuttal" opinion directed to either Reid's disgorgement or corrective advertising opinions.

Rule 26 requires that the "evidence contradict or rebut evidence on the 'same subject matter.'" Fed. R. Civ. P. 26(a)(2)(D)(ii). *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV-WILLIAMS/SIMONTON, 2018 U.S. Dist. LEXIS 124820, at *4 (S.D. Fla. July 26, 2018) "Courts [ ] have held that rebuttal opinions are permitted when they directly address an assertion raised by an opponent's experts." *Id.*; *see also Orange Lake Country Club v. Reed Hein & Assocs.*, No. 6:17-cv-1542-Orl-78DCI, 2019 U.S. Dist. LEXIS 239117, at *9 (M.D. Fla. Oct. 2, 2019) (excluding opinions as not "rebuttal" opinions because they offered a different valuation method and did not address the methods discussed in the opening report); *D'Andrea Bros. LLC v. United States*, No. 08-286C, 2012 U.S. Claims LEXIS 78, 2012 WL 644010, at *4 (Fed. Cl. Feb. 10, 2012) (rejecting a rebuttal

7

expert's report in a patent case because it "presents entirely new damages calculations [and] attempts to tie these new calculations to [the opponent's damages expert]'s report are improper.").

Courts recognize that profits should not be apportioned unless done based on a "reasonable, nonspeculative formula." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985). Although Plumpe attempts to characterize his franchise fee discussion as "apportionment," there is no analysis or calculation of how Defendants' profits should or could be apportioned. Plumpe cites two cases on apportionment, standing for the proposition that a plaintiff "'is not entitled to profits demonstrably not attributable to the unlawful use of his mark,' but that the burden of proving any deduction for sales not based on the infringing mark falls upon the infringer." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 72 (2d Cir. 1998), quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942). Plumpe did not offer any analysis of particular sales/revenue of Defendants that he contended was not associated with the infringing use of FCC's trademarks—he simply discussed how some large hotel might choose to charge franchisees for licensing their brand.

To be admissible, an expert's opinion must assist the trier of fact. *See Frazier,* 387 F.3d at 1262. The current 11th Circuit pattern jury instruction on "Defendant's Profits and Calculation of Profits" instructs the jury as follows (in relevant part):

> In determining [name of defendant]'s profits, [name of plaintiff] only is required to prove [name of defendant]'s gross sales. [Name of defendant] may then prove the amount of sales made for reasons other than the infringement. [Name of defendant] also may prove [his/her/its] costs or other deductions which [he/she/it] claims should be subtracted from the amount of [his/her/its] sales to determine [his/her/its] profits on such sales. Any costs or deductions that [name of defendant] proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to [name of plaintiff].

11th Cir. Pattern Civil Jury Instruction 5.13, p. 11-12[1]. Plumpe's commentary on large hotel franchise fees does not provide a jury with any analysis or methodology to identify actual costs or deductions incurred by Defendants that should be subtracted from Defendants' revenue attributable to the infringement. Instead, Plumpe opines that because some large chain hotels may charge franchisees 5% of room revenue in franchise fees, only 5% of Defendants' (net) revenue should be available for disgorgement[2]. Plumpe does not identify any facts or circumstances that suggest franchise fees are analogous to disgorgement, nor legal support for the notion that a jury should apply publicly-reported franchise fee rates from vastly different businesses to Defendants' revenue to somehow apportion Defendants' revenue between that derived by using the infringing marks versus revenue from other sales and services that did not use the infringing marks. Because the opinions

---

[1] https://pji.ca11.uscourts.gov/

[2] Plumpe offered no explanation why his calculations used net revenue rather than the total room revenue as used in the article on which his opinion relies.

expressed in Paragraphs 44-52 of Plumpe's report are not relevant or helpful to the trier of fact, they should be excluded.

### c. Plumpe's "Factors" and "Expertise" Opinions Should be Excluded

After discussing franchise fees, Plumpe shifts to discussing Defendant Drummond and a real estate blog on making an "Airbnb more Popular," referencing various generic factors he contends could improve "success of a condominium rental…" (Ex. 1, ¶¶53-54.) Notably, Plumpe offers no meaningful formula or analysis for the jury to analyze the disgorgement remedy sought by FCC and addressed in its expert reports. Similarly, citing to an interview of Defendant Drummond, Plumpe states that Drummond has "expertise" in condominium rentals. (*Id.*, ¶57.) These "opinions" fail to provide the jury with any meaningful analysis or framework with which to analyze the damages sought by FCC. Instead, Plumpe's statements suggest to the jury that FCC's damages should not be calculated based on Defendants' profits, as required by the statute and standard jury instructions, but rather, the jury should conclude that the damages are less than Defendants' profits and should be calculated by some unidentified methodology to arrive at another amount not offered in his report. Such an opinion is not helpful to the trier of fact nor is it based on a reliable method to analyze the damages sought by FCC in this case. Accordingly, Plumpe's opinions in Paragraphs 53-57 should be excluded.

## IV.  CONCLUSION

Plumpe's purported opinions on "apportionment" are nothing more than alternative damages theories detached from the facts or law of the case, and generic parroting of blogs and his client. The opinions offered in Paragraphs 44-57 are not helpful to the trier of fact nor are they reliable, and therefore should be excluded.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned personally conferred with Defendants' counsel via telephone on February 27, 2025, and advises the Court that Defendants oppose the relief requested herein.

Respectfully submitted this February 28, 2025,

/s/ *Ryan T. Santurri*
Ava K. Doppelt
Florida Bar No. 393738
adoppelt@allendyer.com
Ryan T. Santurri
Florida Bar No. 015698
rsanturri@allendyer.com
Trevor F. Ward
Florida Bar No. 1031171
tward@allendyer.com
Allen, Dyer, Doppelt + Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone:   407-841-2330
Facsimile:    407-841-2343

Ricardo A. Reyes, FBN 864056
Carrie Stolzer Robinson, FBN 0354030
TOBIN, REYES, ALVAREZ &
DEBIASE, PLLC
Attorneys for Plaintiff
225 N. E. Mizner Blvd., Suite 510
Boca Raton, FL 33432
Phone: (561) 620-0656
Fax: (561) 620-0657
eservice@tobinreyes.com
rar@tobinreyes.com
csrobinson@tobinreyes.com
rreid@tobinreyes.com

**Attorneys for Plaintiff**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 28, 2025, I electronically filed the foregoing using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing to all CM/ECF participants.

By:  /s/ *Ryan T. Santurri*
Ryan T. Santurri

13