# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

_____

**FCC HOTEL TOWER, LLC,**

       Plaintiff,

                          **Case No. 2:23-cv-00702-SPC-KCD**

v.

**THOMAS A. DRUMMOND,**
**MBOR INVESTMENTS, LLC, MBOR**
**AMENITIES, LLC, and MBOR RENTALS, LLC,**

       Defendants.
_____/

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE REBUTTAL REPORT OF JOHN PLUMPE AND INCORPORATED MEMORANDUM OF LAW

Plaintiff's motion does not challenge Plumpe's qualifications but seeks to preclude Plumpe's expert testimony on the grounds of alleged irrelevance and unreliability. Plaintiff's arguments simply mischaracterize the nature and purpose of Plumpe's testimony, and – at best – attack the weight that Plumpe's opinions should be given. Plumpe's expert opinions are both relevant and reliable, providing critical insights into the apportionment of profits and the calculation of damages, which are essential for a fair adjudication of this matter.

## I. LEGAL STANDARD

The Court is familiar with the expert gate-keeping standards. *Matter of Hanson Marine Properties, Inc.*, 2022 WL 3716429, at *1 (M.D. Fla. Aug. 29, 2022).

## II.     MEMORANDUM OF LAW

### A.     Plumpe's Testimony is Not an Improper Rebuttal

As an initial matter, Plaintiff contends that Plumpe's testimony constitutes an improper rebuttal by arguing that Plumpe's rebuttal opinions go "far beyond rebuttal of FCC's damages expert, Marc Reid, by offering affirmative opinions on alternative theories to calculate damages untethered to the opinions presented by Reid." [Dkt. 80] at 1[1]. This is factually incorrect. Plumpe did not offer some alternative damages theory as Plaintiff asserts. Instead, he offered a profit apportionment analysis, which is appropriate when rebutting a claim for a defendant's profits, in response to Reid's incomplete disgorgement analysis of Defendants' profits. *See Mishiwaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206; 86 L. Ed. 1381; 62 S. Ct. 1022 (1942) (plaintiff "is not entitled to profits demonstrably not attributable to the unlawful use of his mark.").

The Supreme Court's ruling in *Mishiwaka Rubber*, make clear that apportionment of Defendants' profits is appropriate to account for any profits demonstrably not attributable to the alleged infringement. *See Jackson v. Grupo Indus. Hotelero, S.A.*, 2009 WL 8634834, at *13 (S.D. Fla. Apr. 29, 2009)

---

[1] For clarity, cited page numbers correspond to the page number listed in the document itself, not the page number of the PDF file.

(recognizing that a court will award only the portion attributable to the infringement if the defendant "can prove that at least some of these profits flow from his own merit rather than from infringement of the plaintiff's mark.").

In his apportionment analysis, Plumpe explains that in operating a condominium rental system (e.g., reservations, management, amenities, etc.), which is similar to Defendants' allegedly infringing activity, there are non-infringing elements that allow the Defendants to generate sales and profits. *See* [Dkt. 89-2] (SEALED) at ¶ 47. Plaintiff's expert chose not to consider these other factors, and it is entirely proper for Defendants' rebuttal expert to point out such deficiencies. *See Jackson v. Grupo Indus. Hotelero, S.A.*, 2009 WL 8634834, at *14 (S.D. Fla. Apr. 29, 2009) ("While the Court might have the discretion under the Lanham Act to award Plaintiff all of the [] nightclub's profits earned during the infringing period, in the exercise of its discretion, given that the profits are overwhelmingly attributable to factors other than the limited use of Plaintiff's [] mark, the Court finds that such an award would be inequitable."). Plumpe's apportionment discussion seeks to address the deficiencies in Reid's disgorgement analysis on this basis. "A rebuttal expert can testify as to the flaws that she believed are inherent in another expert's report that implicitly assumes or ignores certain facts." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *5 (S.D. Fla. June 8, 2011). Indeed, the Southern District court in *Pandora Jewelers* explained that "a rebuttal expert may testify that, while the expert's report implicitly assumes (or erroneously fails to consider) facts X, Y, and Z, the

3

expert's analysis is seriously flawed if the jury does not accept X, Y, and Z as true. This is a well-accepted way to criticize damages estimates." *Id.*

To address the flaws that are inherent in Reid's report, Plumpe references the 2020 study of hotel franchise fees performed by HVS, a global consulting firm focused exclusively on the hospitality industry—which is the same industry as the Defendants' allegedly infringing activity (lodging/hospitality). *Id.* Thus, it's clear Plumpe's permitted apportionment opinion is relevant to Reid's disgorgement opinion. And contrary to Plaintiff's assertion, profit apportionment, by definition, is not linked to specific costs and deductions. It is instead a consideration of profits *after* specific costs have been deducted.

### B. Plumpe's Testimony Is Relevant and Assists the Trier of Fact

Plaintiff suggests that Plumpe's apportionment opinion needs to address any revenue or expense of Defendants that relate to the provision of Defendants' services. *See* [Dkt. 80] at 7. This is fundamentally incorrect. Apportionment is an economic analysis of profits—not an expense analysis. And in conducting that profit analysis, Plumpe provides the discussion of franchise fees to demonstrate that in the relevant lodging and hospitality industry, the benefit attributed to the use of a hotel brand's name, logo, marketing, etc., is typically assessed in the form of hotel franchise fees that are compensation paid by the franchisee to the franchisor. Included in these hotel franchise fees are "Royalty Fees" that are calculated based on a percentage of rooms revenue and represent compensation for the use of the brand's trade name, service marks and associated logos, goodwill,

4

and other franchise services. *See* [Dkt. 89-2] SEALED at ¶ 48. Thus, based on data from HVS regarding the average Royalty Fees charged by hotel companies as a percentage of rooms revenue (which is the relevant metric that includes trademarks), Plumpe determined that the information in the HVS study suggested that hospitality industry royalty rates, which include but are not limited to trademarks and logos, are commonly in the range of approximately 5% of lodging-related revenues. *Id.* at ¶ 52. The data from the HVS study relates to the type of "luxurious" and nationally recognized hotel companies that Plaintiff itself compares itself to and considers its competitors:

```
16      Q.   Other than Marriott, can you name any
17   other -- or the Marriott Club, I guess, can you name
18   any other competitors?
19      A.   Without -- I could probably go online and
20   find them in five minutes, but I don't have them off
21   the top of my head.
22      Q.   But sitting here you can't think of any.
23      A.   No.  But Marriott is exactly one of those
24   that would be a competitor.
```

[Dkt. 86-3], Parisi Dep. Tr. at 104:16-24; *see also id.* at 104:2-15; *id.* at 105:4-11.

By providing the discussion on franchise fees, Plumpe's opinion provides the fact finder a more complete picture that other relevant factors contribute to a seller of lodging-related services revenue in the hospitality industry. In other words, a considerable portion of Defendants' profits are due to factors separate and apart

5

from the allegedly infringing marks. As demonstrated in *Paycargo, LLC, v. Cargosprint LLC*, 2021 WL 2633657, at *3-4 (S.D. Fla. Jun. 25, 2021), the evidence an alleged infringer can offer to show that less than all its profits were attributable to its alleged unlawful use can range from (1) a specific calculation of the profits directly attributable to the unlawful use to (2) an analysis of factors other than the unlawful use that contributed to those profits, absent a specific calculation. In *Paycargo,* the Southern District court permitted expert testimony on apportionment without a specific apportionment calculation—which is the exact same fact pattern as the present case. *See also Pandora Jewelers*, 2011 WL 2295269, at *4. Moreover, in *Hard Candy*, the Southern District court explained that a defendant meets their burden of proving which of its sales are attributable to the alleged infringing activity by demonstrating the existence of other factors that, other than the use of the purported infringing mark, that contributed to the commercial success of the services at issue:

> Thus, contrary to Plaintiff's contention that through Mr. Martinez's report the Defendant attempts to allocate this burden to the Plaintiff, Mr. Martinez's report attempts to meet the very burden that Plaintiff correctly contends falls to the Defendant. **Indeed, the gist of Mr. Martinez's report on this issue appears to be that there are other factors, other than the use of the purported infringing mark, that contributed to the commercial success of the products at issue**, ECF No. [44-3] at 15. **The Report concludes that an award based on disgorgement of profits would provide Hard Candy with a significant windfall counter to the principles of equity because those profits do not serve as a rough measure of harm to the Plaintiff and don't bear any relationship to any unjust enrichment to the Defendant**, ECF No. [44-3] at 20-21.

6

> Thus, although the Plaintiff may contend that Mr. Martinez's opinion fails to cite the standard in the Eleventh Circuit, **it is difficult to comprehend how the Report fails to adequately place the burden of demonstrating a reduced profit or apportionment on the Defendant as required in this Circuit. Indeed, this is the very type of evidence that various courts in this circuit have found to be probative when introduced by an infringing defendant**.

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 2018 WL 10322164, at *7 (S.D. Fla. Jan. 13, 2018) (emphasis added); *see also Dering v. Serv. Experts Alliance LLC*, 2009 WL 1748067, at *3 (N.D. Ga. June 18, 2009), *judgment vacated on other grounds*, 2009 WL 2032001 (N.D. Ga. July 2, 2009); *Jackson v. Grupo Indus. Hotelero, S.A.*, 2009 WL 8634834, *13 (S.D. Fla. Apr. 29, 2009); *Am. Farm Bureau Fed'n v. Ala. Farmers Fed'n*, 935 F. Supp. 1533, 1552 (M.D. Ala. 1996).

Plumpe provides such evidence here, which is consistent with the Eleventh Circuit's Pattern Civil Jury Instructions, which provides that "[i]n determining [name of defendant]'s profits…[Name of defendant] may then prove the amount of sales **made for reasons other than infringement**." 11th Cir. Pattern Civil Jury Instructions 5.13, p. 11-12 (emphasis added); *see also Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304-05 (S.D.N.Y) ("There is a general presumption that an infringer's sales of goods baring the infringing mark were due to the selling power of the mark and not any other cause…If [defendant] can prove that certain 'non-infringing elements' somehow contributed to the profits of the alleged infringing goods, it is entitled to deduct this from the profits it must disgorge to Trouble."). Without this information, the fact finder would be led to believe that the revenue

7

earned from lodging-related services stems solely from trademark usage—which is not the case.

Plaintiff misunderstands the purpose of Plumpe's discussion on hotel franchise fees by arguing that Plumpe's opinion "does not provide a jury with any analysis or methodology to identify the actual costs or deductions incurred by Defendants that should be subtracted from Defendants' revenue attributable to the infringement." [Dkt. 80] at 9. Plaintiff ignores that a purpose of Plumpe's discussion is to provide the jury with a framework of the other relevant factors that may influence a customer to purchase Defendants' services apart from the alleged use of Plaintiff's trademarks. The royalties that are paid by a user of intellectual property stem from its recognition of the economic contribution of a trademark owner's mark to the user's overall business and profits, and thus represents an approach to apportionment that is accepted within the relevant communities.

## B. Plumpe's Methodology Is Reliable and Supported by Case Law

Plaintiff further asserts that Plumpe's opinion is not "based on a reliable method to analyze the damages sought by FCC in this case." [Dkt. 80] at 10. In particular, Plaintiff states that "Plumpe offers no meaningful formula or analysis for the jury to analyze the disgorgement remedy sought by FCC and addressed in its experts reports." [Dkt. 80] at 10. This is simply incorrect and demonstrates that Plaintiff is confusing "damages" with "profits," which are a form of equitable relief. As explained by courts in the Middle District, "[t]o determine whether an expert's

8

methodology is reliable, courts consider (1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; and (4) whether the technique is generally accepted by the scientific community." *United States for Use & Benefit of S. Site & Underground, Inc. v. McCarthy Improvement Co.*, 2017 WL 10434414, at *4 (M.D. Fla. Feb. 3, 2017); *see also Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "Those factors 'may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* (Quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999)). In *Daubert*, the Supreme Court explained that "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. "That includes relying on reports or expertise of others if that evidence is of the sort relied upon by experts in the field." *McCarthy*, 2017 WL 10434414, at *4.

As mentioned *supra*, Plumpe's approach to revenue attribution and profit apportionment is grounded in these principles and is further validated by the established practices in the valuation and accounting communities that allow for experts to consider other factors when arguing for a reduction of profits to be disgorged through revenue attribution and profit apportionment. *See Quiet Tech.*, 326 F.3d at 1341; *see also Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). The AICPA further provides examples of various factors that are relevant to

9

an apportionment calculation and are similar to the factors cited by Plumpe in his apportionment discussion. S*ee* **Exhibit A**, AICPA Forensic & Valuation Services Practice Aid at 28 (explaining that pursuant to the Lanham Act, "the intellectual property owner shall recover only the net profits of the infringer that are traceable to the infringement."). These factors include, but are not limited to, intellectual property elements, business reputation, quality and functionality of the relevant product or service, marketing and advertising, hotel guest accommodations, and are consistent with the principles of *Mishawaka* to show that Plaintiff is not entitled to profits demonstrably not attributable to the unlawful use of its marks. *See id*. at 96; *see also Mishawaka*, 316 U.S. at 206, 62 S. Ct. at 1024, 86 L. Ed. at 1381.

Similarly, other relevant sources in the field have explained that even in such cases where the alleged infringing activity forms an integral part of an economic whole, apportionment methods can and often do split profits. *See* **Exhibit B**, *Litigation Services Handbook: The Role of the Financial Expert*, at 18, 6th edition, Edited by Roman L. Weil, Daniel G. Lentz, and Elizabeth A. Evans, John Wiley & Sons. Inc., 2017; *see also id*. at 17 ("[A]n infringer can argue that its profits result from the presence and influence of factors other than the alleged wrongful act and seek to apportion its computed profit amount based on those factors. For example, in a trademark case the infringer might argue that profits resulted from the functional and aesthetic qualities of its product, the quality of the sales force, in addition to or instead of alleged infringing mark."); *see also Trouble*, 179 F. Supp.

2d at 304-05. Plumpe's methodology is consistent with the AICPA and *Litigation Services Handbook* which are accepted within the relevant valuation and accounting communities.

Plaintiff tries to further discredit Plumpe's methodology by mischaracterizing Plumpe's use of the word "expertise" when describing Drummond's experience in providing condo rentals. Plumpe did not use the term "expertise" to represent that Drummond is an expert (or even exceptional), but rather to highlight the skills Drummond uses to earn rental income. The public has endorsed those skills by paying Drummond for his units and services. Had Plaintiff's counsel taken Plumpe's deposition, they would have learned that it was not an opinion, but merely a listing of skills that he has demonstrated by successfully renting units to the public.

Plumpe's report provides critical information for the jury to analyze and consider, namely, the permissible analysis of the various factors contributing to Defendants' profits separate and apart from the allegedly infringing marks. *See Paycargo,* 2021 WL 2633657, at *3-4. Because FCC is not seeking "damages" but instead the equitable relief of Defendants' profits, Plumpe's report provides a meaningful framework to allow the jury to consider the other factors that cause the relevant customers in the market to spend money purchasing Defendants' services. Without this framework, the fact finder would simply believe that the only reason Defendants earned sales and profits is due to the use of the allegedly infringing marks, which would potentially result in a significant windfall counter to the

principles of equity if full revenues or profits are awarded to Plaintiff. *See Hard Candy*, 2018 WL 10322164, at *7.

### C. Plaintiff's Argument that Plumpe's Opinion is an Improper Rebuttal is Without Merit

Plaintiff's argument that Plumpe's report must be entirely constrained to rebutting Plaintiff's expert report is without merit. The Second Amended Case Management Order is clear that Plaintiff is to provide an expert report (which it did), Defendants are then to provide an expert report (which they did), and then finally Plaintiff is to provide a rebuttal report (which it did). *See* [Dkt. 71] at 1. Plaintiff's motion is built on the fallacy that Defendants may only rebut what Plaintiff's expert offered. While Plumpe's report is entirely proper as a rebuttal report, there is also no obligation that it simply rebut Plaintiff's opinions. This, alone, serves as a basis to deny Plaintiff's motion.

### D. Plaintiff's Challenges Go to the Weight, Not the Admissibility, of Plumpe's Testimony

To the extent Plaintiff objects to Plumpe's reliance on certain data and discussions with Drummond, those objections are also misplaced. Such challenges pertain to the weight of the testimony, not its admissibility. As noted in *McCarthy*, challenges to the accuracy or source of facts underlying an expert's opinion are challenges to its weight rather than its admissibility. *See McCarthy*, 2017 WL 10434414, at *5.

Plumpe's apportionment analysis is based on reasonable, nonspeculative data. There is no requirement that an apportionment analysis provide any specific

calculation of how a defendant's profits should or could be apportioned. *See Paycargo*, 2021 WL 2633657, at *3-4. Indeed, the purpose of the franchise fee discussion in the apportionment analysis is to provide information to the fact-finder to consider when awarding equitable relief of profits and illustrate that a windfall will result if the relevant factors are not considered.

### III. CONCLUSION

Plaintiff misrepresents Plumpe's methodology and conclusions as to revenue attribution and profit apportionment, and then, based on these misrepresentations, argues that both are unreliable under the *Daubert* standard because Plumpe did not provide some numerical calculation of how Defendants' profits should or could be apportioned. However, Plumpe's methodology is generally accepted in the relevant communities and will assist the jury in learning about other relevant factors that contributed to Defendants' revenues and profits. Because Plumpe's testimony is both relevant and reliable as to revenue attribution and profit apportionment, it is up to the jury to determine how much weight should be given to these opinions, not Plaintiff. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) ("Indeed, in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." (Internal quotation marks and citation omitted).

Plaintiff's motion should be denied.

Dated: March 21, 2025

By: */s/ Woodrow H. Pollack*
Woodrow H. Pollack
Florida Bar No. 26802
Lead Counsel
Brian J. Paul
Florida Bar No. 1018684
**SHUTTS & BOWEN, LLP**
4301 West Boy Scout Boulevard
Suite 300
Tampa, FL 33607
wpollack@shutts.com
Telephone: 813-463-4894
Facsimile: 813-229-8901

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 21, 2025 a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack