UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FCC HOTEL TOWER, LLC, a
Florida limited liability company,

     Plaintiff,

v.                             Case No.:  2:23-cv-702-SPC-KCD

THOMAS A. DRUMMOND, MBOR
INVESTMENTS, LLC, MBOR
AMENITIES, LLC and MBOR
RENTALS, LLC,

     Defendants.

_____/

## OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 83), Defendants' Motion for Partial Summary Judgment (Doc. 86), and the parties' respective responses, replies, and exhibits.

### Background

This case centers on a real estate development called Marco Beach Ocean Resort in Marco Beach, Florida.  Plaintiff FCC Hotel Tower, LLC is a real estate development company.  It claims ownership of two registered trademarks—MARCO BEACH OCEAN RESORT and the crest design , which acts as a logo for the resort—and the unregistered trademark MBOR. Defendants' own condominium units in the resort, offer those units to

customers for short-term rental, and manage amenities and short-term rentals for owners of other units in the building.  Defendants have used FCC's marks in relation to those services.   FCC sues Defendants for trademark infringement, unfair competition, and cyberpiracy.  Defendants countersue for cancellation of the crest design mark and raise various defenses, including abandonment of the word mark.  Both parties now move for partial summary judgment.  The following facts are undisputed unless otherwise noted.

The Marco Beach Ocean Resort is a beachside real estate development with condominiums, a restaurant, a spa, and other amenities.  FCC owns the commercial units in the development, but no condominiums.  Beginning in 2001, FCC operated a "hotel program" for condominium owners.  Under the program, FCC would manage rentals of the privately owned condominiums and share the revenue with the owners.   The Hotel Unit Management Agreement provided that the hotel program would remain in effect so long as it was financially viable and met certain thresholds.  On February 1, 2022, FCC notified members it would terminate the hotel program on May 2, 2022, because the program fell below those thresholds.

FCC owns U.S. Trademark Registration No. 2,733,637 for the mark MARCO BEACH OCEAN RESORT, which lists the following services: "Real estate development, development of commercial and residential buildings, namely a hotel and condominium," and "Restaurant services and bar services."

(Doc. 86-16).  FCC also owns U.S. Trademark Registration No. 5485376 for the crest design mark, which lists these services:

> Class 43: Hotels; resort hotel; hotel; restaurant services; bar services, catering; providing banquet and social function facilities for special occasions; providing conference rooms; providing convention facilities; providing facilities for exhibitions; providing temporary accommodation; resort lodging services; hospitality services in the nature of resort hotel services; spa services, namely, providing temporary accommodations and meals to clients of a health spa; and providing information, in the fields of the aforesaid services, via a global computer network
>
> …
>
> Class 44: Massage services; health spa services for health and wellness of the body and spirit offered at a health resort; health spa services, namely, cosmetic body care services; and providing information, in the fields of the aforesaid services, via a global computer network

(Doc. 86-17).

FCC used both marks to promote the resort at least as early as 1998. Between 2018 and 2021, FCC spent on average more than $500,000 a year marketing services under the marks.  In guest surveys conducted from 2018-2021, about 92% of respondents said they were somewhat or extremely satisfied with their stay, more than 25% were repeat guests, about 35% learned of the resort through an internet search, and just over 60% visited FCC's website before booking.

FCC has not owned any condominium units or offered room rental/lodging services since ending the hotel program, but it continues to offer

valet services, catering, banquet facilities, and conference rooms under its trademarks. An entity related to FCC called FCC Beach & Yacht, LLC operates a bar and restaurant on the property and uses FCC's trademarks in relation to those services under what FCC considers an implied license. FCC claims it intends to resume its hotel services, but Defendants argue FCC has no actual plans to do so.

On January 4, 2024, FCC submitted a Combined Declaration of Use and Incontestability under Sections 8 & 15 to the USPTO in connection with the crest design mark:

> For International Class 043, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Hotels; resort hotel; hotel; restaurant services; bar services, catering; providing banquet and social function facilities for special occasions; providing conference rooms; providing convention facilities; providing facilities for exhibitions; providing temporary accommodation; resort lodging services; hospitality services in the nature of resort hotel services; spa services, namely, providing temporary accommodations and meals to clients of a health spa; and providing information, in the fields of the aforesaid services, via a global computer network; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership organization, listed in the existing registration for this class.
>
> ...

> For International Class 044, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: Massage services; health spa services for health and wellness of the body and spirit offered at a health resort; health spa services, namely, cosmetic body care services; and providing information, in the fields of the aforesaid services, via a global computer network; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership organization, listed in the existing registration for this class.

(Doc. 86-9 at 7-8). Jennifer Nicholson, Vice President of Sales and Marketing for the entity that oversees FCC, signed the declaration on January 5, 2024.

Defendant Thomas A. Drummond owns 26 condominium units in the resort. He is the sole managing officer of co-defendants MBOR Investments, LLC, MBOR Rentals, LLC, and MBOR Amenities, LLC, which are in the business of owning units and providing rental and amenity services to units in the property. Defendants currently manage 80 of the 103 condominium units and provide services like valet parking, bellman services, cleaning, laundry, and beach amenities. They advertise the units on AirBnB, VRBO, and their website www.marcobeachoceansuites.com, which Drummond registered on September 19, 2023, shortly after FCC filed this action. Prior to that Drummond used www.marcobeachocean.com, which he registered on January 17, 2022, and which now forwards visitors to the new domain.

Drummond began using the MARCO BEACH OCEAN RESORT mark on his VRBO and Airbnb listings around January 2012. He ceased using it around September 2023, and began using the term Marco Beach Ocean Suites. Drummond used the MARCO BEACH OCEAN RESORT and the crest design mark on business cards and employee shirts from around September 2022, to July 2023.

**Legal Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759

(11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson Cty. Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

## Discussion

The arguments raised in the cross-motions for summary judgment overlap significantly. But because the Court views the facts in the light most favorable to the nonmoving party, the Court will address each motion separately, and the factual inferences made when considering Defendants' motion may differ from the inferences made when considering FCC's motion. *See Cambridge Christian Sch., Inc. Fla. High Sch. Athletic Assoc., Inc.*, 115 F.4th 1266, 1287 (11th Cir. 2024).

### A. Defendants' Motion for Summary Judgment

#### 1. <u>Cancelation of FCC's registration of the crest design mark</u>

Defendants ask the Court to cancel FCC's registration of the crest design mark based on false statements made to the USPTO. "At any time, a party may petition to cancel a registered mark on the ground that the registration was procured by fraud, even if that mark has become incontestable." *Sovereign*

*Military Hospitaller Order v. Fla. Priory of the Knights Hospitallers of Sovereign Order*, 702 F.3d 1279, 1289 (11th Cir. 2012). A trademark owner commits fraud by knowingly making "false, material representations of fact in connection with an application for a registered mark" with "a purpose or intent to deceive the PTO in the application for the mark." *Id.* (quotation marks and citation omitted). "The party seeking cancellation on the basis of fraud must prove its claim by clear and convincing evidence" and "any doubt must be resolved against the charging party." *Id.* (quotation marks and citation omitted). "Fraud in obtaining renewal of a registration amounts to fraud in obtaining a registration[.]" *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986).

Defendants point to the January 4, 2024 declaration, in which FCC represented to the USPTO that it was using the crest design in connection with hotel, resort, and spa-related services, and that it had been doing so for the five years immediately preceding the declaration. Defendants argue the declaration was false because FCC stopped offering those services when it ended its hotel program in 2022. And defendants contend FCC made the false statement with the intent to deceive the USPTO into renewing registration of the crest mark.

FCC concedes that parts of the declaration were incorrect but claims Defendants cannot prove fraudulent intent. FCC also argues it can claim the

benefits of FCC Beach & Yacht, LLC's use of the mark in relation to bar and restaurant services.

Defendants point to the deposition testimony of Joe Parisi—FCC's manager and general counsel—to prove fraudulent intent. When testifying about the 2022 termination of FCC's hotel program, Parisi testified, "At least the hotel portion of what goes on at that property was over." (Doc. 86-3 at 13). Parisi also testified that FCC stopped offering spa services and closed the sundry shop around that time. (Doc. 86-3 at 4, 13). And he acknowledged that on January 5, 2024, FCC was not providing temporary accommodations, lodging services, massage services, or health-spa services. (Doc. 86-3 at 42). But he qualified his answers by testifying that FCC maintained the facilities to offer those services and intend to provide them "as soon as we get an opportunity." (Doc. 86-3 at 41).

FCC responds with the testimony of the person who signed the declaration. Jennifer Nicholson acknowledged that FCC was not offering hotel services, spa services, temporary accommodations, or massage services when she signed the declaration, but she justified her signature:

> I believed it to be true because the marks, I was familiar we had used them for goods and services for years, and it was our intent to use them in the future[.]

(Doc. 86-13 at 24). FCC characterizes Nicholson's state of mind as truthful but perhaps mistaken about the legal meaning.

It appears undisputed that the declaration included material misrepresentations, but there is a genuine dispute over Nicholson's intent. "There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *In re Bose*, 580 F.3d 1240, 1246 (Fed. Cir. 2009). That is true even if Nicholson's misunderstanding was unreasonable because reasonableness "is not part of the analysis." *Id.* Nicholson's explanation raises a genuine dispute over her state of mind, and it will be up to the trier of fact to decide whether FCC submitted the declaration with the intent to defraud the USPTO. Defendants are not entitled to summary judgment on their cancellation claim.

### 2. Abandonment of FCC's trademark rights with respect to hotel-related services

Under the Lanham Act, a mark is deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. "Abandonment is trademark law's way of recognizing that trademark rights flow from use." *Cumulus Media, Inc. v. Clear Channel Commc'n, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002). A defendant can establish abandonment by showing (1) the plaintiff ceased using the mark (2) with an intent not to resume its use. *Id.* "'Use' of the mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "Because a finding of abandonment works an involuntary

forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a 'stringent,' 'heavy,' or 'strict burden of proof.'" *Cumulus Media*, 304 F.3d at 1175.

Defendants argue FCC has abandoned its marks with respect to hotel-related services because it stopped offering such services and has no plans to resume. FCC argues Defendants cannot establish intent to abandon the marks. FCC continues to use the marks in connection with restaurant and bar services (through a licensee), valet services, catering, banquet facilities, and conference rooms. Also, FCC submits evidence it has maintained the ability to resume offering hotel and spa services at significant expense.

Defendants have not carried the heavy burden necessary to prove abandonment. FCC's termination of the hotel program is not enough. First, FCC has continued to use its trademarks in connection with the services it continues to provide at the property. Second, the parties have a genuine dispute over FCC's intention to resume offering hotel and spa services under the marks. Defendants are not entitled to summary judgment on their abandonment defense.

### 3. FCC's rights in the MBOR mark

Defendants next argue FCC has no common-law trademark rights in the mark MBOR, which is not registered with the USPTO. "Common-law trademark rights are appropriated only though actual prior use in commerce."

*Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir.
2011) (internal quotation marks and citation omitted).  Courts in this circuit
use a two-part test to judge whether a party proves sufficient prior use.  The
party must present evidence showing (1) adoption and (2) "use in a way
sufficiently public to identify or distinguish the marked goods in an
appropriate segment of the public mind as those of the adopter of the mark."
*Id.*

Defendants challenge FCC's ability to prove it has used the mark to
distinguish or identify goods or services it offers to the public.  Defendants also
point to the following exchange in Parisi's deposition:

> Q:    Do you claim trademark rights in the letters M-B-O-R?
>
> A:    I do not.  I don't believe we have a trademark on those
> initials, although we've been using those for a considerable period
> of time.  I don't believe that I have an actual trademark on those.

(Doc. 86-3 at 32).  Making a reasonable inference in FCC's favor here, the Court
assumes Parisi was merely acknowledging that FCC has not registered MBOR
with the USPTO, not disclaiming common-law rights to the mark.  In a
declaration attached to FCC's response, Parisi reaffirms that FCC routinely
used the acronym MBOR with guests on the property for years.  He also
testifies that customers of FCC's hotel services used "MBOR" in online reviews.

The Eleventh Circuit has recognized that "abbreviations of registered
trademarks, including acronyms or abbreviations made up of the first letters

of a corporate or business name, are just as entitled to legal protection as the original full trademark." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.*, 830 F.3d 1242, 1256 n.4 (11th Cir. 2016) (cleaned up).  Thus, "[i]f the public has come to shorten a trademark into a nickname, then the nickname is entitled to independent legal protection as a mark." *Id.*  Parisi's testimony that FCC routinely used MBOR with customers and customers adopted the abbreviation is enough to avoid summary judgment.  There is a genuine dispute as to whether FCC can establish common-law rights to the MBOR mark through prior use.

### 4.  FCC's right to damages under 15 U.S.C. § 1111

A trademark owner may not recover profits or damages for trademark infringement "unless the defendant had actual notice of the registration."  15 U.S.C. § 1111.  Displaying the ® symbol or sending a cease-and-desist letter are two ways to satisfy the notice requirement.  Defendants argue FCC may not recover damages for conduct prior to July 31, 2023, when they received a cease-and-desist letter because FCC failed to use the ® symbol on the MARCO BEACH OCEARN RESORT sign outside the building.

FCC easily overcomes Defendants argument with multiple examples of its word and design mark accompanied by ® symbol.  In fact, FCC presents a copy of Drummond's own business card, which includes the marks with the ®

symbol.  There is ample evidence that Defendants had actual notice of FCC's

registrations.

### 5.  Likelihood of consumer confusion

The final section of Defendants' motion challenges FCC's ability to prove

a likelihood that consumers will confuse the services offered by the respective

parties because the nature of the services are distinct—Defendants offer hotel-

related services, and FCC offers real estate development services.  Defendants

also attack the strength of the mark by characterizing it as merely descriptive

of the location and type of the establishment.  Finally, Defendants claim that

while both parties use the internet to promote their services, they do not

overlap.  Defendants offer condo rentals on its website, Airbnb, and VRBO,

while FCC's relevant websites only promote the resort's restaurant.

Likelihood of confusion is the linchpin of a trademark infringement

claim.  Courts in the Eleventh Circuit consider seven factors when determining

the likelihood of confusion: (1) the strength of the mark alleged to have been

infringed, (2) similarity of the infringed and infringing marks, (3) similarity

between the goods or services offered under the marks, (4) similarity of the

sales methods and customer bases, (5) similarity of advertising methods, (6)

intent of the alleged infringer to misappropriate the trademark owner's good

will, and (7) existence and extent of actual confusion in the consuming public.

*Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 127 (11th Cir. 2022).  The

weight of each factor varies depending on the circumstances, but courts must consider all seven.

Likelihood of confusion is a generally a factual question, and courts should decide it on summary judgment only in limited circumstances. *Id.* Defendants have not demonstrated this is one of those rare cases. They only address three of the required seven factors—the similarity of the services offered by the parties, the strength of the mark, and the similarity of advertising methods. The most important factors are actual confusion and the strength of the mark. *See FCOA LLC v. Foremost Title & Escrow Servs. LLC, 57 F.4th 939, 947 (11th Cir. 2023).* When viewing the facts in the light most favorable to the non-moving party, the Court finds that FCC has established genuine disputes regarding the strength of the marks and actual confusion. Online reviews submitted by FCC suggest at least some actual confusion among customers. What is more, the marks are at least arguably incontestable, and incontestable descriptive marks are presumed to be relatively strong in the Eleventh Circuit. *Id. at 949.* So even if FCC's word mark is descriptive as Defendants argue, the strength-of-the-mark factor does not necessarily favor Defendants.

Defendants have not established a right to summary judgment on the issue of likelihood of confusion.

**B. FCC's Motion for Summary Judgment**

FCC moves for summary judgment on its claims for trademark infringement and unfair competition. To succeed on a trademark infringement claim, "a plaintiff must demonstrate (1) that it owns a valid mark with priority and (2) that the defendant's mark is likely to cause consumer confusion with the plaintiff's mark." *Id.* at 946. The analysis for federal trademark infringement also applies to unfair competition claims under Florida law. *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 n.14 (11th Cir. 1989).

FCC is not entitled to summary judgment. First, the parties dispute FCC's rights in the marks. As the Court explained above, Defendants' claim for cancellation of the crest mark and abandonment of the word mark in relation to hotel-related services is a matter for the finder of fact to decide. While the Court denied Defendants' request for summary judgment on those claims, they raise genuine disputes over FCC's rights to the marks when viewed in the light most favorable to Defendants. With that in mind, the Court turns to the likelihood-of-confusion factors. They also preclude summary judgment.

1. <u>Strength of marks</u>

The first step in assessing the strength of a mark is to place it "on the sliding scale of trademark strength, from weakest to strongest: (1) generic, (2)

16

descriptive, (3) suggestive, and (4) fanciful or arbitrary." *Id.* at 949. The Eleventh Circuit explained the types of marks as follows:

> Generic marks refer to a class of which an individual service is a member (e.g., "liquor store" used in connection with the sale of liquor). Descriptive marks describe a characteristic or quality of an article or service (e.g., "vision center" denoting a place where glasses are sold). "Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive." For instance, "penguin" would be suggestive of refrigerators. An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services).

*Id.* (cleaned up).

The MARCO BEACH OCEAN RESORT mark is descriptive because it describes the general location and nature of the property where FCC offers the services related to the mark. The mark is incontestable under 15 U.S.C. § 1065. And as the Court noted above, courts in the Eleventh Circuit presume incontestable descriptive marks to be relatively strong. *Id.* The crest mark is arbitrary and thus a strong mark.

Defendants challenge the presumptive strength of the MARCO BEACH OCEAN RESORT mark with evidence of third-party use. *See id.* (recognizing that the presumed strength of an incontestable descriptive mark "can be rebutted by a strong showing of third-party use of the mark that significantly impacts consumer recognition of the original mark"). "The significance of third party use is evaluated based on the entire name and symbol, the type of

business in which it is used, and geographic location. *Breakers of Palm Beach,
Inc. v. Int'l Beach Hotel Dev., Inc.*, 824 F. Supp. 1576, 1583 (S.D. Fla. 1993).

Defendants submit screenshots of three third-party vacation rental
websites that use the MARCO BEACH OCEAN RESORT mark to describe the
offered accommodations.  These third-party uses include the entire mark and
offer the same services to the same consumers as FCC before it terminated the
hotel program.  FCC argues three examples of third-party use is not enough to
weaken their mark.  But in context, these uses are significant.  There is no
obvious way for consumers to know whether they are renting a condo from
FCC, Defendants, or someone else.  The third-party uses thus undermine the
mark's ability to inform consumers of the source of the services being promoted.

As a practical matter, any condo owner must use the name of the
property when offering their unit for rent.  And given that multiple condo
owners use MARCO BEACH OCEAN RESORT to advertise their units for
rent, the Court can reasonably infer that consumers understand the words to
describe the location of the condos rather than the identity of the person
offering the rental services.  Putting it in trademark terms, MARCO BEACH
OCEAN RESORT does not appear to have developed a secondary meaning.

Viewing the evidence in a light most favorable to Defendants, the Court
finds the mark MARCO BEACH OCEAN RESORT to be relatively weak.  On
the other hand, the crest design mark is fanciful and arbitrary, and Defendants

present no significant evidence of third-party use.  The crest design mark is
relatively strong.

2.  <u>Similarity of the marks</u>

There is no question that Defendants used exact copies of FCC's marks.
Defendants attempt to tease out a distinction by arguing the parties used the
marks in different ways.  Defendants claim they merely used the marks to
identify the location of their rental units.  But the evidence suggests
Defendants also used the marks as a logo on websites, business cards, and
employee uniforms.  Defendants even copied the font and layout of the word
mark:



This factor favors FCC.

3.  <u>Similarity of the services</u>

This factor "concerns whether the products [or services] are of a kind the
public could *think* originate from a single source."  *FCOA*, 57 F.4th at 953.
Both parties have used the marks in connection with condominium rental
services and the amenities available to guests.  Defendants argue FCC's
termination of the hotel program removed it from the condo-rental market, so
it no longer offers the same services as Defendants.  But FCC continues to offer

some services to guests at the resort, and the parties genuinely dispute whether FCC has a bona fide intent to resume its hotel program. That factual dispute prevents the Court from fully weighing this factor on summary judgment.

4. <u>Similarity of sales methods, customers, and advertising</u>

The next two factors focus on how and where the parties interact with potential customers. *Id.* at 954-55. "The primary focus is on the overlap of the customer bases, because the greater the overlap, the greater the likelihood that consumers will be expose to both marks and become confused." *Id.* Both parties primarily used online advertising to promote hotel/resort services. Defendants argue FCC exited that market and now only promotes its services to potential real estate development customers. But again, FCC continues to offer some resort services, and its intent to resume its hotel business is disputed.

5. <u>Defendants' intent</u>

This factor "asks whether the defendant adopted the plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Wreal,* 38 F.4th at 135. FCC argues Defendants' exact copying of its marks demonstrates their intent to trade on FCC's goodwill. Defendants' claim that they used FCC's marks merely to identify where their rental units are located is unconvincing—the use of the crest mark on business cards and

employee uniforms does not communicate the location of the condos. But
Defendants also state they believed their use of the marks created no conflict
due to FCC's termination of the hotel program. The parties have a genuine
dispute on this point. If Defendants had a good faith belief that their use of
the marks created no conflict with FCC's use, Defendants' use might not reflect
an intent to confuse customers. *See Alfa Corp. v. Alpha Warranty Servs., Inc.*,
696 F. Supp. 3d 1086, 1103 (M.D. Ala. 2023).

6. Actual confusion

When determining how much evidence is necessary to show actual
confusion, "courts must take into account the circumstances of each case."
*FCOA*, 57 F.4th at 956. "[T]he quantum of evidence needed to show actual
confusion is relatively small." *Wreal*, 38 F.4th at 139. In three cases involving
high volumes of sales to the general public, the Eleventh Circuit found evidence
of two to four instances sufficient to support a finding of actual confusion. *Id.*
at 139-40 (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1544-45 (11th Cir.
1986) and *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1166 (11th
Cir. 2019)).

The kind of person confused and the degree of confusion are as important
as the number of instances. *Caliber Auto. Liquidators, Inc. v. Premier
Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010). "Short-lived
confusion or confusion of individuals casually acquainted with a business is

worthy of little weight while confusion of actual customers of a business is
worthy of substantial weight." *Id.*

FCC has submitted 18 mostly negative reviews from guests of the
property since it ended its hotel program. Four of the reviews are from
returning guests who expressed surprise and disappointment with the decline
in the quality of the services they received. These are the three clearest
examples of confusion:

- I used to vacation here with my family ever since I was a little
  girl. This place has truly gone to hell. The staff are extremely
  unfriendly and unhelpful, they treat you like you are a bother
  rather than a guest. If you are feeling nostalgic about this place
  SKIP it. (Doc. 83-2 at 10).
- I come to Marco Island every summer with my family and stay
  at the Marco Beach Ocean Resort…This is no longer a hotel even
  if they try to tell you it is. It is a rental intermediary where you
  stay in the rooms but basically have no hotel amenities- very
  disappointing. (Doc. 83-2 at 11).
- We stayed here years ago when this was truly a resort and hotel
  and loved it…Shame on me for not checking the reviews, but this
  place is no longer a resort, and barely a hotel. I gave them a one
  star review for deception. The website has the same look and
  feel as the old resort website. (Doc. 83-2 at 15).

Five other reviewers complained they did not receive the types of amenities
and services they expected from a resort. They said things like, "This is not a
real hotel" and, "it's an old resort that has now turned into dated condos that
get rented out under the guise of renting a room in a resort." (Doc. 83-2 at 11,

14). Another appears to refer to older, positive reviews: "We were shocked that this resort is rated as high as it is." (Doc. 83-2 at 17).

The number and type of confusion evidenced by these reviews could support a finding of actual confusion. But as Defendants point out, the confusion cannot be definitively attributed to their use of FCC's marks. It is not apparent how many of the reviewers rented units from Defendants. What is more, the property is still called Marco Beach Ocean Resort. A repeat customer returning to the property after FCC ended its hotel program could reasonably expect to receive the same level of service provided during prior stays. Defendants likely contributed to the confusion by adopting FCC's marks, but the evidence does not establish how much. FCC may also be contributing to the confusion. It maintains the signage on the building, which continues to prominently display both marks even after FCC ended its hotel program, perhaps suggesting a continuity of services that could confuse customers. (*See* Doc. 86-11). Viewing this factor in a light most favorable to Defendants, the Court cannot say it favors FCC.

7. Conclusion

After weighing the likelihood-of-confusion factors, the Court finds summary judgment on FCC's trademark infringement claims—and thus unfair competition claims—inappropriate. Defendants' claims for cancellation of FCC's crest mark and limited abandonment of its word mark remain in play,

so the Court cannot determine FCC's rights to the marks as a matter of law. And there are too many factual disputes for the Court to determine the likelihood of confusion at this stage.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion for Partial Summary Judgment (Doc. 83) and Defendants' Motion for Partial Summary Judgment (Doc. 86) are **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on July 8, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record