UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FCC HOTEL TOWER, LLC, a
Florida limited liability company,

    Plaintiff,

v.                                                 Case No.:  2:23-cv-702-SPC-KCD

THOMAS A. DRUMMOND, MBOR
INVESTMENTS, LLC, MBOR
AMENITIES, LLC and MBOR
RENTALS, LLC,

    Defendants.
_____/

## AMENDED[1] OPINION AND ORDER

Before the Court are Plaintiff FCC Hotel Tower, LLC's Motion to Exclude Certain Testimony of Proffered Expert John G. Plume (Doc. 80), Defendants' *Daubert* Motion to Exclude the Report and Supplemental and Rebuttal Report of Marc Reid (Doc. 84), and the parties' respective responses, replies, and exhibits.

## Background

This case centers on a real estate development called Marco Beach Ocean Resort in Marco Beach, Florida. Plaintiff FCC Hotel Tower, LLC is a real estate development company. It claims ownership of two registered

---

[1] This amendment corrects typographical errors in the original order.

trademarks—MARCO BEACH OCEAN RESORT and a crest design that acts as a logo for the resort—the unregistered trademark MBOR. Defendants own condominium units in the resort, rent those units to customers, and manage short-term rentals for owners of other units. Defendants have used FCC's marks in connection with their business. FCC sues Defendants for trademark infringement, unfair competition, and cyberpiracy. Both parties have retained experts to testify about damages, and both challenge the admissibility of some of the opposing expert's opinions.

## Legal Standard

A witness who is qualified as an expert may give opinion testimony if:

> (a) the expert's ... specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial judge serves as a gatekeeper—ensuring evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

In determining the admissibility of expert testimony, the Court engages in a "rigorous" three-part inquiry. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). It must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the

> expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (citation omitted). Though there is overlap among the inquiries, these are "distinct concepts and the courts must take care not to conflate them." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 851 (11th Cir. 2021) (citation omitted). The proponent of expert testimony always bears the burden on admissibility. *Frazier*, 387 F.3d at 1244.

## Discussion

FCC's damages expert is Marc Reid, a certified public accountant with over 30 years of experience in financial management, auditing, and IT management consulting. His initial expert report describes his calculation of unjust-enrichment damages based on Defendants' revenue for the year 2022. Reid notes he did not account for deductible expenses because Defendants did not provide evidence of any. Likewise for 2023 and 2024 profits—Reid did not calculate profits for those years because Defendants had not provided the necessary data. Reid also gives an estimate for the cost of corrective advertising to rehabilitate FCC's brand.

Defendants retained John Plumpe, an expert in the economic aspects of intellectual property. Plumpe's calculation of potential damages is a fraction of Reid's because he deducted expenses from the revenue to determine total

3

profits. Plumpe also opined that damages should only include the percentage of profits that can be apportioned to Defendants' use of FCC's trademarks. His report presents data on hotel franchise fees and identifies attributes other than trademarks that attract customers to condominium rental services. Finally, Plumpe challenges the basis of Reid's opinion of the need for corrective advertising.

Reid followed Plumpe's report with a supplemental and rebuttal report. Reid disagreed with some of Plumpe's deductions from Defendants' profits and with Plumpe's position on apportionment. Reid also defended his opinion on corrective advertising.

**A. Defendants' Motion**

Defendants ask the Court to exclude Reid's second report because it goes beyond permissible supplementation and rebuttal. Defendants also challenge Reid's competence to testify about reputational harm, trademark confusion, and brand rehabilitation.

1. <u>Reid's supplemental and rebuttal report</u>

Federal Rule of Civil Procedure 26(e) requires parties to timely supplement or correct a report if they learn it is incorrect or incomplete. "But a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) (internal quotation marks and citation omitted). A rebuttal

4

reports is "limited to contradicting or rebutting evidence on the same subject matter identified by another party and is not an opportunity to advance new opinions or new evidence." *Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1331 (N.D. Ga. 2017).

Defendants' argument on this point is based on the introduction section of Reid's initial report, which stated that FCC retained him to determine the damages "resulting from Defendants' alleged infringement of FCC's valuable trademarks *and other intellectual property*[.]" (Doc. 85-1 at 3) (emphasis added). Defendants suggest Reid's initial damages calculation thus must have included the copyright infringement claims FCC asserted in its original complaint but later abandoned. Defendants contend Reid unlawfully bolstered his opinion by dropping the italicized language—which Defendants characterize as a "significant defect"—in his supplemental report.

Defendants' argument is frivolous. There is no mention of FCC's copyrights in Reid's initial report, and all his opinions explicitly relate to Defendants' alleged trademark infringement. Reid's omission of an immaterial reference to "other intellectual property" does not justify exclusion of the supplemental report.

### 2. Reid's competence

Defendants argue Reid's expertise in financial management, auditing, and IT management consulting does not qualify him to testify about

5

reputational harm, trademark confusion, or any other trademark or brand rehabilitation methodologies. In response, FCC claims the parties resolved this issue in the conferral required by Local Rule 3.01(g)—they agreed Reid would not testify about corrective advertising. Because FCC has agreed not to proffer Reid's opinion about corrective advertising, the admissibility of the opinion is moot.

### B. FCC's Motion

FCC challenges the relevance of Plumpe's opinions about hotel franchise fees and apportionment, Drummond's expertise in condominium rentals, and factors that contribute to the success of condominium rentals. Plumpe and Defendants rely on *Mishawaka Rubber v. Woolen Mfg, Co. v. S.S. Kresge Co.*, 316 U.S. 203 (1942) as the legal basis for the challenged sections of Plumpe's report. In *Mishawaka*, the Supreme Court held that a trademark owner is not entitled to any profits the infringer proves are attributable to something other than the unlawful use of the mark. *Mishawaka*, 316 U.S. at 206-07. Defendants argue Plumpe's challenged testimony is reliable and relevant evidence relating to revenue attribution and profit apportionment.

 1. Plumpe's opinions on franchise fees

Plumpe's report discusses hotel franchise fees as a potential means of determining what percentage of Defendants' profits should be apportioned to their use of FCC's trademarks. FCC first argues Plumpe's opinions about

6

franchise fees are improper rebuttal because they have nothing to do with the disgorgement analysis and instead offer an alternative measure of damages.

It is true that an expert's rebuttal testimony must address the same subject matter and may not advance new arguments or present new evidence. *See Wherevertv, Inc. v. Comcast Cable Comm'ns., LLC*, No. 2:18-cv-529-JLB-NPM, 2022 WL 4017049, at \*4 (M.D. Fla. Sept. 4, 2022). But that is irrelevant here. "A rebuttal report with opinions beyond the proper scope is properly categorized as an affirmative report and becomes subject to the disclosure deadline governing such reports." *Hanover Ins. Co. v. United States*, 137 Fed. Cl. 479 (Fed. Cl. Apr. 12, 2018). Defendants disclosed Plumpe's report on December 2, 2024, the deadline for disclosure of their expert report. (Doc. 71). FCC had until January 1, 2025, to file a rebuttal report. So even if parts of Plumpe's report should be considered affirmative opinions rather than rebuttal, the Defendants timely disclosed the report, and FCC had an opportunity to address any new issues it raised.

FCC also challenges the relevance and helpfulness of Plumpe's opinions on hotel franchise fees and apportionment because he did not provide any analysis or methodology tying the data to this case. Defendants, as the parties proffering Plumpe's testimony, must demonstrate that (1) he is qualified to testify competently about the matters he addresses, (2) the methodology he used to reach his conclusions is sufficiently reliable, and (3) his testimony

7

assists the trier of fact. *United States v. Frazier*, 387 F.3d 1244, 1250 (11th Cir. 2004).

Plumpe's report explains the purpose of the challenged section of his report: "I first quantify Defendants' profits associated with the businesses that are allegedly infringing the Trademarks, and then I consider the portion of those profits that may be attributable to the Trademarks as used in connection with Defendants' alleged infringing services." (Doc. 89 at 19). Plumpe opines that "there are non-infringing elements that allow the Defendants to generate sales and profits." (*Id.* at 23). He then summarizes the findings of a study titled *2020 United States Hotel Franchise Fee Guide*, which "provides a comparative review of various hotel franchises based on their applicable franchise fees." (*Id.*). After the summary, Plumpe concludes "that hospitality industry royalty rates, which include – but are not limited to trademarks and logos – are commonly in the range of approximately 5% of lodging-related revenues." (Doc. 89 at 23).

Plumpe adequately explains how he reached the 5% number, but he does not explain how or why a jury should use it to calculate a damages award. In other words, the report provides a reliably accurate estimate of typical royalty rates in the hotel industry, but it does not establish how that estimate assists the trier of fact. Defendants claim Plumpe's discussion "provides the fact finder a more complete picture that other relevant factors contribute to a seller

8

of lodging-related services revenue in the hospitality industry." (Doc. 93 at 5). But that is not true. Instead, Plumpe explains—mostly by pulling quotes from the study—the primary elements of hotel franchise fees. Those include royalty fees, advertising and marketing contribution fees, sales/reservation fees, frequent-traveler program fees, and miscellaneous fees. Plumpe does not explain how this information can be used to better understand Defendants' finances or otherwise explain its relevance to this case.

On the surface, the franchise-fee section of Plumpe's proposed testimony merely reports historical data on hotel franchise fees. And on that level, the information is irrelevant and unhelpful. To the extent Plumpe presents the data as a framework for profit apportionment, it is unreliable because Plumpe does not provide any reasoning or methodology to connect typical hotel franchise fees with the amount of Defendants' profits attributable to their use of FCC's trademarks.

For these reasons, the Court finds that Defendants have not established the admissibility of Plumpe's testimony on hotel franchise fees. But there is a caveat. Courts sometimes use "lost royalties to determine the actual damages incurred by a victim of trademark misuse[.]" *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519-20 (11th Cir. 1990) (approving of lost royalties as a measure of damages when a licensee continues using a trademark after expiration of the license). FCC has not given any indication that it seeks an

award for damages based on royalty fees. But if FCC opens the door to royalty fees as a measure of its actual damages, Plumpe's opinions on typical hotel franchise fees would become relevant.

### 2. Plumpe's opinions on factors and expertise

Finally, FCC challenges the next two sections of Plumpe's report. In the first, Plumpe lists factors other than FCC's trademarks that impact consumers' decision to rent condominiums at Marco Beach Ocean Resort, including location, price, size, in-unit amenities, cleaning and maintenance, service/responsiveness, reviews, nearby attractions, safety and security, and convenient parking. In the second, Plumpe simply opines that Drummond's acquisition of units at Marco Beach Ocean Resort and the transition of other owners from FCC's hotel program to Drummond's competing services suggest some unit owners perceived Drummond's services to be superior.

FCC argues Plumpe fails to provide any meaningful analysis or framework and instead suggests damages should be calculated with some unidentified methodology rather than an accounting of Defendants' profits. The Court disagrees. Unlike his franchise-fee testimony, these portions of Plumpe's report explain how the information he presents relates to apportionment of Defendants' profits—an issue the jury may be tasked with deciding. Not every expert opinion needs to be based on a scientific or mathematic methodology. An expert may rely solely on experience if he or she

explains "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Holmes*, ---F.4th ---, ---, 2025 WL 1730238, at *9 (11th Cir. June 23, 2025).

Plumpe's expertise includes the calculation and valuation of damages in intellectual property disputes. Based on his experience and accepted practices in the field, Plumpe consulted sources to identify competitive attributes of short-term condominium rental services the jury can consider for purposes of apportionment. FCC's criticisms of the sources Plumpe consulted goes to weight, not reliability.

Accordingly, it is now

**ORDERED:**

1. Plaintiff FCC Hotel Tower, LLC's Motion to Exclude Certain Testimony of Proffered Expert John G. Plume (Doc. 80) is **granted in part and denied in part**. Plumpe's testimony regarding hotel franchise fees is excluded unless FCC opens the door by seeking damages based on reasonable royalties.

2. Defendants' *Daubert* Motion to Exclude the Report and Supplemental and Rebuttal Report of Marc Reid (Doc. 84) is **denied**, though the Court acknowledges the parties' agreement that Reid will not testify about corrective advertising.

**DONE** and **ORDERED** in Fort Myers, Florida on July 21, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record